**John DOE, Plaintiff,**

v.

**CIGNA LIFE INSURANCE CO. OF NEW YORK and Liberty Life Assurance Co. of Boston, Defendants.**

**No. 00–CV–1018S.**

United States District Court, W.D. New York.

Jan. 26, 2004.

nicate between Chicago and New York is not a particularly onerous burden on defendants.

Geiger and Rothenberg, LLP, David Rothenberg, of Counsel, Rochester, for Plaintiff.

Bond, Schoeneck & King, LLP, Richard A. Braden, of Counsel, Buffalo, for the Defendant, Liberty Life Assurance Company of Boston.

## DECISION & ORDER

SKRETNY, District Judge.

### I. INTRODUCTION

In this case, Plaintiff John Doe seeks to recover long-term disability benefits from Defendants Cigna Life Insurance Company of New York ("Cigna") and Liberty Life Assurance Company of Boston ("Liberty") pursuant to § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"). In addition, Plaintiff claims that he is entitled to equitable relief pursuant to ERISA § 502(a)(3) because Liberty breached its fiduciary duty. Currently before this Court is Liberty's Motion for Summary Judgment.[1]

---

1. Defendant Cigna elected not to file a motion for summary judgment. Therefore, this Decision and Order does not address Plaintiff's claims against Defendant Cigna.

## II. BACKGROUND

### A. Facts

The facts of this case, which are undisputed for purposes of the instant motion, may be summarized as follows.[2] In July of 1988, Plaintiff began working as an attorney at Harris, Beach, & Wilcox ("Harris Beach"), a law firm located in Rochester, New York, (Liberty's Rule 56 Statement, ¶ 1). Plaintiff was eventually promoted to partner. *Id.*

Defendant Liberty is an insurance company licensed to do business in the State of New York. (Amended Complaint, ¶ 3). In 1995, Liberty issued a Group Disability Income Policy (the "Policy") to Harris Beach. (Liberty's Rule 56 Statement, ¶ 2). The Policy, which became effective on July 1, 1995, provided long-term disability benefits to certain eligible classes of Harris Beach employees, including partners. *Id.* at ¶¶ 2–3.

On August 14, 1997, Plaintiff was hospitalized for three weeks after contracting encephalitis and spinal meningitis. (Plaintiff's Memorandum of Law, p. 1). Except for a brief period in September, Plaintiff was absent from work as a result of his illness until December of 1997. (Liberty's Rule 56 Statement, ¶ 16).

On October 31, 1997, Susan Dearstyne, Harris Beach's administrative manager, composed and mailed a letter to Liberty (the "Dearstyne Letter").[3] *Id.* at 17. In her letter, Ms. Dearstyne stated that she wanted to provide Liberty with "preliminary notice of a disability claim which may

be made on behalf of one of [Harris Beach's] partners." (Dearstyne Letter, at LL–00048, attached as Exhibit C to Affidavit of Paula McGee). The letter did not identify the partner or describe the nature of his illness, but advised that Ms. Dearstyne would provide Liberty with additional information if the situation progressed. *Id.*

After returning to work in December of 1997, Plaintiff continued to practice law at Harris Beach until July 31, 1998, when he joined the law firm of Trevett, Lenweaver, & Salzer, P.C. ("Trevett").[4] (Liberty's Rule 56 Statement, ¶ 29–30).

On June 22, 2000, Plaintiff submitted a Disability Claim Form to Liberty. *Id.* at 15. Plaintiff claimed that he was entitled to long-term disability benefits under the terms of the Policy because he had suffered "encephalitis and spinal meningitis resulting in permanent brain damage" while employed at Harris Beach. (Disability Claim Form, at LL–00047, attached as Exhibit C to McGee Affidavit). After reviewing the claim, Liberty determined that Plaintiff had not provided timely notice of his claim as required under the Policy. (Liberty's Rule 56 Statement, ¶ 23). Thereafter, Liberty informed Plaintiff that his claim was denied. (Notice of Rejection of Claim, at LL–00044, attached as Exhibit E to McGee Affidavit).

### B. Procedural History

Plaintiff commenced this action on October 24, 2000, by filing a Summons and

---

**2.** A more detailed statement of the facts may be found in the Report and Recommendation filed by the Honorable Leslie G. Foschio, United States Magistrate Judge, on September 11, 2003. (Docket No. 44).

**3.** Liberty maintains that it did not receive the Dearstyne Letter until June of 2000, when Plaintiff submitted it along with a Disability Claim Form. However, for purposes of the

instant motion, this Court must construe the facts in the light most favorable to Plaintiff and will assume that Liberty received the Dearstyne Letter sometime during the early part of November 1997.

**4.** Plaintiff worked as a partner at Trevett until August 21, 2000. *Id.* at ¶ 30.

Complaint in the New York State Supreme Court, Monroe County. Defendant Liberty removed the case to the United States District Court for the Western District of New York on November 27, 2000.[5]

On April 26, 2002, Defendant Liberty filed a Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[6] Thereafter, this Court referred this matter to the Honorable Leslie G. Foschio, United States Magistrate Judge, to hear Liberty's summary judgment motion and issue a Report and Recommendation.

Judge Foschio filed a Report and Recommendation on September 11, 2003, recommending that Liberty's motion be granted in all respects. On October 8, 2003, Plaintiff filed Objections to the Report and Recommendation.[7] This Court heard oral argument on December 8, 2003, and reserved decision at that time.

## III. DISCUSSION

### A. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is warranted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir.2003). A fact is "material" if it "might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. In a case where the non-moving party bears the ultimate burden of proof at trial, the movant may satisfy its burden by pointing to the absence of evidence supporting an essential element of the non-moving party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

When deciding a motion for summary judgment, a court must view the evidence and the inferences drawn from the evidence "in the light most favorable to the party opposing the motion." *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991). The function of the court is not "to weigh the

---

5. On July 5, 2001, Plaintiff filed a Motion for Leave to File an Amended Complaint. The Honorable William G. Bauer, United States Magistrate Judge, granted that motion and Plaintiff filed an Amended Complaint on August 9, 2001.

6. In support of its motion, Liberty filed a memorandum of law, Rule 56 Statement of Facts, Affidavit of Paula McGee (with attached exhibits), Reply Affirmation of Richard Braden, and a reply memorandum of law. Plaintiff filed the following documents in opposition: Affidavit of David Rothenberg, Response to Liberty's Rule 56 Statement, Rule 56 Statement of Facts.

7. In support of his Objections, Plaintiff filed a List of Objections and the Reply Affidavit of David Rothenberg. Liberty filed a memorandum of law in response to Plaintiff's Objections.

Plaintiff also submitted a memorandum of law in support of his Objections. Although it appears that this memorandum was served, it was evidently not filed with the Clerk of the Court. This Court directs the Clerk to file Plaintiff's memorandum of law, submitted in support of Plaintiff's Objections.

evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505.

Summary judgment is not appropriate if "there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Ford*, 316 F.3d at 354. However, the party against whom summary judgment is sought "must do more than simply show that there is some metaphysical doubt as to the material facts .... [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir.2002).

### B. Liberty's Motion for Summary Judgment

Plaintiff asserts two causes of action against Defendant Liberty. First, pursuant to ERISA § 502(a)(1)(B), Plaintiff contends that he is entitled to receive disability benefit payments under the terms of the Policy. Second, Plaintiff alleges that he is entitled to equitable relied under ERISA § 502(a)(3) because Liberty breached its fiduciary duty to him. Liberty argues that it is entitled to summary judgment with respect to both causes of action. This Court will address each cause of action in turn.

#### 1. ERISA § 502(a)(1)(B) Claim

Under ERISA § 502(a)(1)(B), a participant or beneficiary of an employee benefit plan may commence a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

■ In an action commenced pursuant to § 502(a)(1)(B), the court reviews a plan administrator's decision to deny benefits "under a *de novo* standard unless the benefit plan gives the administrator ... discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 123–24 (2d Cir.2003) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)).

■ If the benefit plan vested the administrator with discretionary authority, the denial of benefits is subject to a deferential, "arbitrary and capricious" standard of review. *Burke v. Kodak Retirement Income Plan*, 336 F.3d 103, 109 (2d Cir. 2003). Under this standard, the decision to deny benefits "may be overturned only if the decision is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 249 (2d Cir.1999) (quoting *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir.1995)).

■ In the present case, the Policy provided that Liberty possessed discretionary authority to construe the terms of the Policy and determine benefit eligibility. (Policy, at LL–00024, attached as Exhibit A to McGee Affidavit). Accordingly, this Court must evaluate Liberty's decision to deny Plaintiff's claim under the arbitrary and capricious standard of review. Therefore, in the context of the instant summary judgment motion, the question presented is whether, viewing the evidence in the light most favorable to Plaintiff, a reasonable trier of fact could conclude that Liberty's decision to deny benefits was arbitrary and capricious.

As discussed *supra*, Liberty denied Plaintiff's claim because it found that he had failed to file a timely notice of claim. The Policy required Plaintiff to provide

written notice of claim "within 30 days of the date of the loss on which the claim is based, if that is possible." (Policy, at LL–00025, attached as Exhibit A to McGee Affidavit). If it was not possible for Plaintiff to provide notice within thirty days of the date of the loss, he was required to provide notice of his claim "as soon as it [was] reasonably possible to do so." *Id.* As noted above, although Plaintiff was hospitalized with encephalitis and spinal meningitis in August of 1997, he did not file a Disability Claim Form with Liberty until June of 2000, almost three years later. Liberty determined that this notice was untimely and denied Plaintiff's claim for benefits.

In his Report and Recommendation, Judge Foschio concluded that no reasonable trier of fact could find that Liberty's decision was arbitrary and capricious. (Report & Recommendation, p. 10–19). Plaintiff objects to the Report and Recommendation and argues that genuine issues of fact exist as to whether Liberty's decision was arbitrary and capricious. Specifically, Plaintiff contends that Liberty's decision was arbitrary and capricious because (a) the Dearstyne Letter provided Liberty with timely notice of Plaintiff's claim, (b) Liberty never conducted an investigation to determine whether it was reasonably possible for Plaintiff to provide notice of his claim prior to June of 2000, and (c) Liberty's decision was based upon an unreasonable interpretation of the Policy's terms. This Court will address each argument *seriatim.*

### a. The Dearstyne Letter

█ As part of its decision to deny benefits, Liberty determined that the Dearstyne Letter, which was mailed in October

of 1997, did not constitute timely compliance with the notice provisions of the Policy. For the following reasons, this Court finds that no reasonable trier of fact could conclude that Liberty's decision in this regard was arbitrary and capricious.

It is undisputed that Plaintiff was required to provide written notice of his claim to Liberty. While the Policy does not set forth specific requirements regarding the contents of a notice of claim, it is axiomatic that a document purporting to provide notice of a claim must, at minimum, provide *notice* of a *claim.* In other words, it must advise Liberty that the plan participant claims that he or she is entitled to receive benefits.

This Court finds that there is no genuine issue regarding the fact that the Dearstyne Letter did not provide Liberty with notice of Plaintiff's claim. The letter did not identify Plaintiff by name. It did not describe either the nature of his illness or the extent of his disability. The letter did not demand or suggest that Liberty pay benefits to anyone, conduct an investigation, or take any action whatever. The letter simply stated that a Harris Beach partner had been hospitalized and that a disability claim *might* be filed in the future on his behalf. Critically, it advised that Ms. Dearstyne would keep Liberty "aware of this situation *if* it progresses." (Dearstyne Letter, at LL–00048, attached as Exhibit C to McGee Affidavit) (emphasis added). No reasonable trier of fact could conclude that it was arbitrary and capricious for Liberty to determine that the Dearstyne Letter did not constitute compliance with the Policy's notice requirement.[8]

---

8. In the alternative, Plaintiff contends that Liberty acted arbitrarily and capriciously by failing to respond to the Dearstyne Letter. Specifically, Plaintiff argues that Liberty had

a fiduciary duty and affirmative obligation to respond to the Dearstyne Letter and alert Harris Beach to the fact that the letter did not constitute notice of Plaintiff's claim. For the

#### b. Investigation

█ As noted above, the Policy required that written notice of claim be provided to Liberty within thirty days of the date of loss or, if that was not possible, as soon as it was "reasonably possible" to do so. Plaintiff argues that Liberty acted arbitrarily and capriciously when it denied his claim as untimely without conducting an investigation to determine whether it was reasonably possible for him to provide notice before June of 2000. This Court finds that argument unavailing.

Preliminarily, this Court notes that Plaintiff has asserted contradictory arguments. First, Plaintiff contends that he provided notice of his claim in October 1997 through the Dearstyne Letter. On the other hand, Plaintiff asserts that an investigation by Liberty would have revealed that it was not reasonably possible for him to provide notice of his claim until June of 2000.

Further, as discussed fully in Judge Foschio's Report and Recommendation, the undisputed facts in the administrative record demonstrate that Liberty's decision regarding the need for an investigation was neither arbitrary nor capricious.[9] For example, Plaintiff's Disability Claim Form stated that his illness began on August 14, 1997. It further advised that he had worked as a partner at a law firm since December of 1997. Indeed, the form stated that Plaintiff was presently working as an attorney. (Disability Claim Form, at LL–00047, attached as Exhibit C to McGee

Affidavit). The form also stated that Plaintiff's employment with Harris Beach had been terminated on July 31, 1998, when Plaintiff "left to join another firm." *Id.* Thus, the administrative record establishes that Plaintiff worked as a partner at a law firm for nearly two and a half years after the onset of his alleged disability. In light of this undisputed fact, no reasonable trier of fact could conclude that it was arbitrary and capricious for Liberty to decide that it did not need to conduct an investigation to determine whether it was reasonably possible for Plaintiff to provide notice of his claim prior to June of 2000.

#### c. Interpretation of Policy Term

Under the Policy, Plaintiff was required to provide written notice of his claim within thirty days of "the date of the loss on which the claim is based . . . ." (Policy, at LL–00025, attached as Exhibit A to McGee Affidavit). The term "date of the loss" is not defined by the Policy. It is clear from the record that Liberty's decision to deny Plaintiff's claim for benefits was based upon the fact that it interpreted "date of the loss" to mean the date on which Plaintiff's disability allegedly commenced, which was August 14, 1997.[10] Plaintiff argues that Liberty's interpretation of the term "date of the loss" was arbitrary and capricious.

█ As noted *supra*, the Policy vests Liberty with the sole discretion to construe the terms of the Policy and to determine benefit eligibility. *Id.* at LL–00024. It further provides that "Liberty's deci-

---

reasons discussed *infra* in Section III.B.2, this Court finds that argument to be without merit.

9. This Court hereby adopts the section of Judge Foschio's Report and Recommendation that addresses this issue (which is located on pages 15–19 of that document), including the authorities cited and the reasons stated therein.

10. Liberty's initial denial notice states that Plaintiff's claim was being rejected because "[n]otice and proof of disability was not furnished within 30 days . . . after disability commenced." (Notice of Rejection of Claim, at LL—00044, attached as Exhibit E to McGee Affidavit).

sions regarding construction of the terms of this policy ... shall be conclusive and binding." *Id.* Accordingly, Liberty's interpretation cannot be disturbed unless it was unreasonable. *Burke*, 336 F.3d at 109; *see also Zuckerbrod v. Phoenix Mut. Life Ins. Co.*, 78 F.3d 46, 49 (2d Cir.1996) (noting that "[a] district court may not upset a reasonable interpretation by the [plan] administrator") (quotation omitted).

█ Thus, the question presented is whether Liberty could reasonably conclude that the term "date of the loss" referred to the date on which Plaintiff's alleged disability commenced. Under the Policy, a claimant is "disabled" only if he or she is unable to perform "all of the material and substantial duties" of his or her occupation. (Policy, at LL–00006, attached as Exhibit A to McGee Affidavit). It would therefore be reasonable for Liberty to conclude that "the date of the loss" refers to the date on which the claimant lost the ability to perform all of the material and substantial duties of his or occupation, *i.e.* the date on which the disability commenced. This interpretation is also supported by the fact that the notice deadline runs from "the date of the loss *on which the claim is based.*" *Id.* at LL–00025 (emphasis added). A claim for disability benefits is, by definition, based upon an allegation that the claimant is disabled. As such, Liberty could reasonably conclude that the "the loss on which the claim is based" refers to the onset of the alleged disability. In sum, this Court finds that no reasonable trier of fact could conclude that

Liberty's interpretation of the term "date of loss" was arbitrary and capricious.

In the alternative, Plaintiff argues that this Court should review Liberty's interpretation of the term "date of the loss" under a *de novo* standard. Specifically, Plaintiff contends that Liberty's interpretation is not entitled to any deference because the company first advanced the "date on which the disability commenced" interpretation during this litigation. This Court finds Plaintiff's argument to be without merit. As noted above, it is clear from the administrative record that Liberty's decision to deny Plaintiff's claim was based upon the fact that the company interpreted "date of the loss" to mean the date on which the disability commenced. (Notice of Rejection of Claim, at LL–00044, attached as Exhibit E to McGee Affidavit).[11]

### 2. ERISA § 502(a)(3) Claim

In his second cause of action, Plaintiff seeks equitable relief pursuant to ERISA § 502(a)(3). That provision states that a civil action may be commenced by an ERISA plan participant, beneficiary, or fiduciary "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or ... to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provision of this subchapter or the terms of the plan ...." ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

The Supreme Court has held that Congress intended § 503(a)(3) to be a "catch all" provision, which acts "as a safety net,

---

**11.** In his Report and Recommendation, Judge Foschio recommended an alternative ground for granting Liberty summary judgment with respect to Plaintiff's § 502(a)(1)(b) claim. Specifically, Judge Foschio concluded that there was no genuine issue but that Liberty reasonably determined that Plaintiff was not "disabled," as that term is defined under the Policy. (Report & Recommendation, at p. 496–503). This Court need not address this alternative ground because it has already determined that Liberty is entitled to summary judgment for the reasons stated above. This Court does not adopt Section C of Judge Foschio's Report and Recommendation, which discusses this issue.

offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996).

█ Plaintiff contends that he is entitled to relief under § 502(a) (3) because Liberty breached its fiduciary duty. Under ERISA, a plan fiduciary is required to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and ... with the care, skill, prudence, and diligence" of a prudent person acting in like circumstances. ERISA § 404(a), 29 U.S.C. § 1104(a). The Second Circuit has held that "[a]lthough a fiduciary is not required to voluntarily disclose changes in a benefit plan before they are adopted ..., a fiduciary ... has a duty to deal fairly and honestly with its beneficiaries." *Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 88 (2d Cir.2001) (internal citations and quotation marks omitted); *see also Becher v. Long Island Lighting Co.*, 129 F.3d 268, 271 (2d Cir.1997) ("An ERISA fiduciary has an obligation to provide full and accurate information to the plan beneficiaries regarding the administration of the plan.").

█ In the present case, Plaintiff argues that Liberty had a fiduciary duty and affirmative obligation to respond to the Dearstyne Letter. Specifically, Plaintiff contends that upon receiving the Dearstyne Letter in November 1997, Liberty was required to alert Plaintiff to the fact that he was in danger of failing to comply with the notice provisions of the Policy.

Plaintiff's argument relies upon the assumption that Liberty knew, or reasonably should have known, that the Dearstyne Letter was an attempt to comply with the notice provisions of the Policy.[12] In light of the following undisputed facts, this Court finds that no reasonable trier of fact could accept this assumption. The first line of the Dearstyne Letter states that the letter's "purpose" was to provide Liberty "with *preliminary* notice of a disability claim which *may* be made on behalf of one of [Harris Beach's] partners." (Dearstyne Letter, at LL–00048, attached as Exhibit C to McGee Affidavit) (emphasis added). The use of the term "preliminary" indicates that Harris Beach was aware that further action would be required to comply with the notice provisions of the Policy. The use of the word "may" suggests that it was not certain that a claim would even be filed.

Moreover, the Dearstyne Letter neither invited nor demanded a response by Liberty. Indeed, as Judge Foschio noted in his Report and Recommendation, the letter implied "that Liberty should await further advice before taking any action." (Report & Recommendation, at p. 34). Specifically, the letter advised that Ms. Dearstyne would "keep [Liberty] aware of this situation *if* it progresses." (Dearstyne Letter, at LL–00048, attached as Exhibit C to McGee Affidavit) (emphasis added). In light of this advice and the fact that the letter simply stated that a claim *might* be filed in the future, no reasonable trier of fact could conclude that it was dishonest, unfair, or negligent for Liberty to await further instruction from Ms. Dearstyne.[13]

---

12. Plaintiff acknowledged that his argument relies upon this assumption. (Rothenberg Reply Affidavit, ¶ 26).

13. In the alternative, Plaintiff contends that the "law of the case" doctrine bars Liberty from seeking summary judgment with respect to this cause of action. For the reasons stated by Judge Foschio in his Report and Recommendation, this Court finds that argument to be without merit. This Court hereby adopts the portion of the Report and Recommendation that addresses this issue (located on pages 32–33), including the authorities cited and the reasons given therein.

## IV. CONCLUSION

For the foregoing reasons, this Court finds that Liberty is entitled to summary judgment with respect to both causes of action. No reasonable trier of fact could conclude that Liberty's decision to deny Plaintiff's claim was arbitrary and capricious. Further, there is no genuine issue regarding the fact that Liberty did not breach its fiduciary duty to Plaintiff by deciding not to respond to the Dearstyne Letter.

## V. ORDERS

IT HEREBY IS ORDERED that Defendant Liberty's Motion for Summary Judgment (Docket No. 29) is GRANTED.

FURTHER, that this Court ACCEPTS the Report and Recommendation filed by the Honorable Leslie G. Foschio, United States Magistrate Judge, (Docket No.44) to the extent referenced in this Decision and Order.

FURTHER, that Plaintiff's Objections to the Report and Recommendation (Docket No. 47) are DENIED.

SO ORDERED.

## REPORT and RECOMMENDATION

FOSCHIO, United States Magistrate Judge.

### JURISDICTION

This matter was initially referred to the Hon. William G. Bauer by the Hon. William M. Skretny, on May 2, 2002 for report and recommendation on dispositive motions (Doc. No. 35). By order dated August 30, 2002 the undersigned was substituted for Magistrate Judge Bauer (Doc. No. 42). The matter is presently before the court on Defendant Liberty Life Assurance Company's motion for summary judgment, dated April 26, 2002 (Doc. No. 29).

### BACKGROUND

On October 24, 2000, Plaintiff commenced this action in New York State Supreme Court, County of Monroe alleging breach of contract to provide long-term disability benefits by Defendants Liberty Life Assurance Company of Boston ("Liberty") and CIGNA Life Insurance Company of New York ("CIGNA") seeking damages and declaratory relief. On November 27, 2000, Defendant Liberty removed that matter to this court, pursuant to 28 U.S.C. § 1441(b), asserting that the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, provides the exclusive cause of action for Plaintiff's claim (Doc. No. 1). Liberty filed its Answer on December 4, 2000, setting forth affirmative defenses (Doc. No.5). CIGNA filed its Answer on December 15, 2000 (Doc. No. 6).

On July 5, 2001, Plaintiff moved to amend the Complaint to recover past and future disability benefits under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1) ("Section 502(a)(1)(B)"), against Liberty and Cigna, and requesting that all state court actions be discontinued (Doc. No.13). Further, Plaintiff sought to allege, pursuant to Section 502(a)(3), 29 U.S.C. § 1132(a)(3)(B) ("Section 502(a)(3)"), "equitable relief in the form of total benefits which would have been payable to plaintiff" based on Liberty's alleged violation of its fiduciary obligations. Liberty responded on July 20, 2001, in a Memorandum of Law Opposing Plaintiff's Motion for Leave to Amend Complaint, asserting that Plaintiff's Section 502(a)(3) claim was redundant and failed to seek equitable relief (Doc. No.16). Judge Bauer granted Plaintiff's motion to amend at oral argument on July 30, 2001 (Doc. No. 20). The court held that Plaintiff's proposed claim that Plaintiff's benefits were improperly denied was separate and

distinct from Plaintiff's claim that Liberty breached its fiduciary duty to properly process Plaintiff's claim and, further, that, at that stage of the proceedings, it was not clear if Plaintiff was seeking the same relief by asserting claims under both Sections 502(a)(1)(B) and 502(a)(3) (Doc. No. 22) ("Hearing Transcript") at 4. Consequently, on August 9, 2001, Plaintiff filed his Amended Complaint bringing a claim against both Liberty and CIGNA pursuant to Section 502(a)(1)(B), and a separate claim against Liberty under Section 502(a)(3) (Doc. No. 21). Defendant Liberty filed its Answer to the Amended Complaint on September 13, 2001 (Doc. No. 23).

On April 26, 2002, Liberty brought the instant motion (Doc. No. 29) along with its Memorandum of Law Supporting Defendant Liberty Life Assurance Company of Boston's Motion for Summary Judgment (Doc. No. 30) ("Liberty's Memorandum"), a Statement of Undisputed Material Facts Pursuant to Local Rule 56 (Doc. No. 31) ("Liberty's Statement of Undisputed Facts"), and the Affidavit of the Liberty Litigation/Claims Referral Manager Paula McGee with attached exhibits (Doc. No. 32) ("McGee Affidavit"). On May 31, 2002, in opposition to Liberty's motion, Plaintiff filed a Memorandum of Law (Doc. No. 39) ("Plaintiff's Memorandum"), Plaintiff's Response to Liberty's Local Rule 56 Statement (Doc. No. 37) ("Plaintiff's Fact Statement") and the Affirmation of David Rothenberg, Esq., with attached exhibits (Doc. No. 38) ("Rothenberg Affirmation"). Liberty responded by filing a Reply Memorandum of Law in Further Support of Liberty's Motion for Summary Judgment (Doc. No. 41) ("Reply Memorandum") and a reply affirmation of Richard A. Braden, Esq. (Doc. No. 40) ("Braden Affirmation"). Oral argument was deemed unnecessary.

Plaintiff asserts a claim pursuant to Section 502(a)(1)(B) for recovery of benefits allegedly due under disability insurance policies issued by Defendants Liberty and CIGNA and a separate claim against Liberty, pursuant to Section 502(a)(3), for breach of fiduciary duty in the processing of Plaintiff's claim. Liberty argues that it is entitled to summary judgment on the Section 502(a)(1)(b) claim because Plaintiff's notice of claim was untimely and Plaintiff is, in any event, ineligible for coverage under the terms of the Liberty long-term disability insurance policy issued to Plaintiff's former law firm. Liberty's Memorandum at 6. Liberty further contends that Plaintiff's Section 502(a)(3) breach of fiduciary duty claim should be dismissed because it is redundant, does not seek equitable relief, and lacks any basis in law or fact. Based on the following, Liberty's motion should be GRANTED on both Plaintiff's claims.[1]

### FACTS

On July 1, 1988, Plaintiff commenced employment at the law firm of Harris, Beach & Wilcox, LLP (" Harris Beach") located in Rochester, New York as a partner. Liberty's Fact Statement ¶ 1; Plaintiff's Fact Statement ¶ 1. On July 1, 1995, a Group Disability Income Policy ("the Policy") issued by Liberty to Harris Beach became effective. Liberty's Fact Statement ¶ 2; Plaintiff's Fact Statement ¶ 2. Under the terms of the policy all partners at Harris Beach who are in "active employment" hired prior to, on, or after the July 1, 1995 effective date of the policy, became eligible for Long Term Disability

---

**1.** Regardless of the outcome of the instant motion, as CIGNA, which insured Plaintiff after commencing employment at his new firm on August 1, 1998, has not filed dispositive motions, the case will proceed to a non-jury trial as to CIGNA's liability.

Benefits. McGee Affidavit, Exhibit A at LL–00003; Liberty's Fact Statement ¶ 3; Plaintiff's Fact Statement ¶ 3. While employed at Harris Beach, Plaintiff practiced as a plaintiff's personal injury attorney. Rothenberg Affidavit, Exhibit B at 2.

In August 1997, Plaintiff contracted encephalitis and spinal meningitis resulting in his hospitalization for three weeks. Plaintiff's Memorandum at 1. As a result of this illness, except for a brief attempt to return to work in September 1997, Plaintiff was absent from work at Harris Beach from August 14, 1997 through December 1997. McGee Affidavit, Exhibit C. On October 31, 1997, Susan Dearstyne, Harris Beach's administrative manager, mailed Liberty a "preliminary notice of a disability claim." McGee Affidavit, Exhibit C at LL–00048. Plaintiff, upon his return to Harris Beach in December 1997, continued to practice law at the firm until he terminated his employment on July 31, 1998 and joined the law firm of Trevett, Lenweaver & Salzer, P.C., where he was employed as a partner from August 1, 1998 through at least August 21, 2000. Liberty's Fact Statement ¶ ¶ 29–30; Plaintiff's Fact Statement ¶ ¶ 29–30.

On June 19, 2000, a representative of Harris Beach contacted Liberty by telephone to inform Liberty that the firm would be submitting a claim on Plaintiff's behalf. McGee Affidavit at 4. Upon receiving the telephone call Liberty began to evaluate the timeliness of Plaintiff's claim. *Id.* at 5 and Exhibit D. Liberty advised Harris Beach to submit a notice of claim so the claim could be evaluated. *Id.* Accordingly, on June 22, 2000, Liberty received a Disability Claim Form completed by Plaintiff and Harris Beach. McGee Affidavit, Exhibit C.

Thereafter, on June 27, 2000, Liberty sent a letter to Plaintiff denying his claim for disability benefits based on Plaintiff having not submitted a notice of disability claim within 30 days of the "date of loss on which the claim is based" or as soon as it was reasonably possible to do so, in accordance with the terms of the Policy. McGee Affidavit, Exhibit F at LL–00042. In addition, Liberty's rejection letter stated that Plaintiff could request review of Liberty's denial and in doing so should state the reasons as to why Plaintiff's claim should not have been denied, as well as provide supporting documentation. McGee Affidavit, Exhibit F. On June 29, 2000, Liberty also issued Plaintiff a "Notice of Total or Partial Rejection of Claim for Disability Benefits," which stated that Plaintiff's claim for disability benefits was rejected because "[n]otice and proof of disability was not furnished within 30 days ... after disability commenced." McGee Affidavit, Exhibit E. Liberty further stated in the rejection that the October 31, 1997 letter from Harris Beach was only a preliminary notice of a potential claim, not a formal claim, and was nevertheless beyond the 30 day notice period required by the Policy. *Id.* at LL–00046.

In response to Liberty's letter, on August 14, 2000, Plaintiff wrote to Liberty requesting that Liberty review its denial of coverage based on the October 31, 1997 letter from Harris Beach, and the evidence of permanent disability Plaintiff provided upon first learning his injury, based on his prior illness, would be permanent. McGee Affidavit, Exhibit B at LL–00039 –LL–00040. According to Plaintiff, his physician, Dr. Marvin Goldstein, continued to advise Plaintiff until the spring of 2000, that Plaintiff was expected to make a full recovery with no permanent cognitive deficits from the encephalitis and spinal meningitis. Rothenberg Affidavit, Exhibit A at 1–2. In early 2000, over two years after the onset of Plaintiff's illness, because Plaintiff had not regained full cognitive

function, Dr. Goldstein began to test further to determine the extent of Plaintiff's cognitive loss and whether there was any permanence to such loss. Rothenberg Affidavit, Exhibit C at 2. According to Plaintiff, these tests, a MRI and an EEG, could not have been ordered any earlier because the affected part of Plaintiff's brain was continuing to heal. *Id.* After reviewing the MRI and EEG, Dr. Goldstein ordered Plaintiff's treatment with a medication intended to restore cognitive function. *Id.* In the spring of 2000, after this treatment failed, Dr.Goldstein determined that Plaintiff had sustained permanent brain injury with permanent cognitive deficits. *Id.*

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a) and (b); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir.1991). The court is required to construe the evidence in the light most favorable to the non-moving party. *Tenenbaum v. Williams,* 193 F.3d 581, 593 (2d Cir.1999) *citing Anderson, supra,* at 255, 106 S.Ct. 2505. The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the nonmoving party's favor may be drawn, a moving party cannot obtain a summary judgment. *Celotex, supra,* at 322, 106 S.Ct. 2548; *see Anderson, supra,* at 247–48, 106 S.Ct. 2505 ("summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.' Such a motion, whether or not accompanied by affidavits, will be 'made and supported as provided in this rule [FRCP 56],' and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file, "designate" specific facts showing that there is a genuine issue for trial.' " *Celotex Corp. supra,* at 323–24, 106 S.Ct. 2548 (1986) (quoting Fed.R.Civ.P. 56). Thus, "as to issues on which the nonmoving party bears the burden of proof, the moving party may simply point out the absence of evidence to support the nonmoving party's case." *Nora Beverages, Inc. v. Perrier Group of America, Inc.,* 164 F.3d 736, 742 (2d Cir.1998).

Once a party moving for summary judgment has made a properly supported showing as to the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor. *Goenaga v. March of Dimes Birth Defects Foundation,* 51 F.3d 14, 18 (2d Cir.1995). In opposing a motion for summary judgment a party "may not simply rely on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Id.,* at 18.

### B. Timeliness of Plaintiff's Notice of Claim

A federal district court reviews an ERISA plan administrator's decision to

deny benefits "under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Where a policy does give the administrator discretionary authority, the court reviews the decision under an "arbitrary and capricious" abuse of discretion standard. *Pulvers v. First UNUM Life Ins. Co.*, 210 F.3d 89, 92 (2d Cir.2000). Here, the Policy states, "Liberty shall possess the authority, in its sole discretion, to construe the terms of this policy and to determine benefit eligibility hereunder. Liberty's decisions regarding construction of the terms of this policy and benefit eligibility shall be conclusive and binding." McGee Affidavit, Exhibit A at LL–00024. The Policy further provides discretionary authority to Liberty, the relevant standard method of review in assessing the merits of Plaintiff's Section 502(a)(1)(B) claim for denial of benefits is whether the Liberty decision was arbitrary and capricious.

"The arbitrary and capricious standard of review is highly deferential to a plan administrator. The question before a reviewing court under this standard is 'whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *Jordan v. Retirement Committee of Rensselaer Polytechnic Institute*, 46 F.3d 1264, 1271 (2d Cir.1995) *quoting Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.*, 419 U.S. 281, 285, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974) (internal quotation marks omitted). Under the ar-

bitrary and capricious standard, a plan administrator's decision to deny benefits "may be overturned only if the decision is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Kinstler v. First Reliance Std. Life Ins. Co.*, 181 F.3d 243, 249 (2d Cir.1999) *quoting Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir.1995). Courts undertaking arbitrary and capricious review should not function as substitute plan administrators, and a court's review should be limited to the administrative record. *Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir.1995). Therefore, on the question of late notice, the issue before the court is whether there is a genuine issue of material fact as to whether Liberty's decision that Plaintiff did not provide timely notice of his disability claim was arbitrary and capricious.

Based on the administrative record, the court finds it was reasonable for Liberty to determine that Plaintiff filed his notice of claim in an untimely manner, thereby warranting denial of benefits. New York law provides that an insured has an obligation to comply with the notice of claim clauses of an insurance policy. *See New York v. Blank*, 27 F.3d 783, 793 (2d Cir.1994); *Commercial Union Ins. Co. v. International Flavors & Fragrances Inc.*, 822 F.2d 267, 271 (2d Cir.1987) ("Under New York law, compliance with a notice-of-occurrence provision in an insurance policy is a condition precedent to an insurer's liability under the policy."). The insured's failure to provide timely notice of a claim constitutes a complete defense for the insurance company whether or not it was prejudiced by the delay.[2] *Green Door Re-*

---

2. ERISA contains a broad preemption provision, providing that the statute "shall supersede any and all State laws insofar as they may now or hereafter relate to any [covered] employee benefit plan," 29 U.S.C. 1144(a).

However, New York law applies here because of ERISA's "saving clause," 29 U.S.C. 1142(b)(2)(A), which expressly exempts from preemption any state law "which regulates insurance." *See UNUM Life Insurance Com-*

*alty Corporation v. TIG Insurance Company*, 329 F.3d 282, 287 (2d Cir.2003) *citing Am. Home Assurance Co. v. Int'l Ins. Co.*, 90 N.Y.2d 433, 440, 661 N.Y.S.2d 584, 684 N.E.2d 14 (1997); *Olin Corp. v. Insurance Co. of North America*, 743 F.Supp. 1044, 1053 (S.D.N.Y.1990).

Under the terms of the Policy, "[w]ritten notice of claim must be given to Liberty within 30 days of the date of the loss on which the claim is based, if that possible. If that is not possible, Liberty must be notified as soon as it is reasonably possible to do so." McGee Affidavit, Exhibit A at LL–00025. In addition, the Policy provides that "[w]hen Liberty has the written notice of claim, Liberty will send the Covered Person its claim forms. If the forms are not received within 15 days after written notice of claim is sent, the Covered Person can send Liberty written proof of claim without waiting for the form." *Id.* Finally, "[p]roof of claim must be given to Liberty ... no later than 30 days after the end of the Elimination Period.[3] Failure to furnish such proof within such time shall not invalidate nor reduce any claim if it was not reasonably possible to furnish such proof within such time." *Id.* at LL–00026. Liberty interprets these provisions to require "written notice of claim within thirty days after the occurrence or commencement of illness or injury, or as soon thereafter as reasonably possible" and "written proof of loss to Liberty within thirty days after the 'Elimination Period', unless it was not reasonably possible to give proof within such time." Liberty's Memorandum at 13.

Liberty argues that in accordance with these provisions, Plaintiff was required to give Liberty written notice of his claim by September 13, 1997, or as soon thereafter as reasonably possible, considering Plaintiff's sick leave from Harris Beach, based on his illness, began on August 14, 1997. Therefore, Liberty argues that Plaintiff's notice was untimely because it was not received by Liberty until Plaintiff filed his Disability Claim form with Liberty on June 22, 2000, and Plaintiff provided no evidence demonstrating that it was not possible for him to do so earlier.

Plaintiff contends that Liberty's decision was arbitrary and capricious because Liberty in fact received notice of his claim when Susan Dearstyne, an administrator at Harris Beach, wrote to Liberty on October 31, 1997 to advise Liberty of a potential claim, albeit without identifying Plaintiff as claimant or providing any specifics as to the nature of the prospective claim. Plaintiff's Memorandum at 7. Further, Plaintiff asserts that Liberty had a fiduciary duty to inform Harris Beach that Ms. Dearstyne's letter was inadequate notice of Plaintiff's claim under the Policy. Plaintiff also argues that under the Policy's terms, notice is required within 30 days of loss of earnings, not of the underlying injury, sickness or disability. *Id.* Finally, Plaintiff maintains that Liberty did not investigate and consider whether it was reasonably possible for Plaintiff to give notice prior to June 22, 2000. *Id.* at 6.

*pany of America v. Ward*, 526 U.S. 358, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999) (holding that California's notice-prejudice rule, under which an insurer cannot avoid liability although the proof of claim is untimely, unless the insurer shows it suffered actual prejudice from the delay, "regulated insurance" within the meaning of ERISA's saving clause and thus escaped preemption by ERISA, and was therefore properly applied to the issue of the beneficiary's alleged late notice).

**3.** "Elimination Period" means a period of consecutive days of Disability for which no benefit is payable. McGee Affidavit, Exhibit A at LL–00006. In this case, the Elimination Period is 180 days and begins on the first day of Disability. *Id.* at LL–00003; LL–00006.

However, the court finds there is nothing in the administrative record to support a conclusion that Liberty received notice of Plaintiff's claim, sufficient under the Policy, prior to June 22, 2000, and that it was unreasonable for Liberty to determine Harris Beach's October 31, 1997 letter to be inadequate notice of Plaintiff's claim as required by the Policy. Specifically, the October 31st letter from Ms. Dearstyne does not provide the name or any information regarding the nature of the potential claimant's illness or the extent of such person's disability. It advises only that a partner at the firm was hospitalized for a illness which began on August 14, 1997, was absent from work, under a physician's care, and that the long term prognosis was unknown. McGee Affidavit, Exhibit C at LL–00048. While the Policy does not contain particular requirements for the contents of the notice of claim, it was not unreasonable for Liberty to determine that a letter lacking the claimant's name or any description of the illness underlying the "disability" fails to constitute notice under the Policy. Such information is not without significance to an insurer. For example, among the well established purposes of a notice of claim requirement, is to enable the insurer to timely investigate the claim, exercise control over the claim, to provide an opportunity for the insurer to suggest alternative diagnosis and treatment, recommendations to minimize any loss, and initiate steps to establish an early reserve against a claim. *Commercial Union Ins. Co. v. International Flavors & Fragrances, Inc.*, 822 F.2d 267, 271 (2d Cir.1987); *Utica Mut. Ins. Co. v. Fireman's Fund Ins. Companies*, 748 F.2d 118, 121 (2d Cir.1984). In the case of a disability claim, early notice also permits the insurer to attempt to minimize the loss by suggesting alternative diagnoses and treatments. Further, the letter specifically states that its purpose is to provide

preliminary notice of a disability claim which *may* be made on behalf of one the partners at Harris Beach. McGee Affidavit, Exhibit C at LL–00048. Thus, there was no reason for Liberty to consider the Dearstyne letter to be an attempt to provide notice of a claim. Moreover, Ms. Dearstyne stated in the letter that she would keep Liberty "aware of this situation *if* it progresses." *Id.* (underlining added). Hence, there was nothing in the October 31st letter to prompt Liberty to further inquire about the "disability claim," based on Ms. Dearstyne's letter.

Second, Liberty did not act arbitrarily and capriciously in interpreting the Policy's requirement that "notice of claim must be given to Liberty 30 days of the date of the loss on which the claim is based," to mean, in this case, 30 days from Plaintiff's onset of illness or injury. McGee Affidavit, Exhibit A at LL–00025. While the Policy does not contain a definition of the terms loss or illness, it defines injury as "bodily impairment resulting directly from an accident and independently of all other causes." *Id.* at LL–00007. Contrary to Plaintiff's contention, the fact that a policy defines the term "injury" but not "loss," does not necessarily mean that such terms conflict and that the term "loss" cannot be rationally interpreted by a plan administrator to encompass illness or injury. In fact, the evidence reasonably supports the conclusion that Plaintiff first suffered his loss, *i.e.* his brain damage, when he became ill in August 1997. As discussed, Discussion, *supra,* at 13, with regard to the justification for requiring early notice of claim, it is not irrational for a benefit plan covered by ERISA to insist on notification of claim at the earliest time after the basis for the claims becomes known to the claimant.

Based on Plaintiff's Disability Claim Form, submitted in June 2000, it was rea-

sonable for Liberty to conclude that Plaintiff suffered the loss on which his claim is based when he became ill in August 1997 with spinal meningitis and encephalitis. The Disability Claim Form, stamped received by Liberty on June 22, 2000, states that because of Plaintiff's illness, he incurred brain damage resulting in his sick leave beginning on August 14, 1997 and experienced difficulty in resuming his normal work schedule upon his return to the firm in September 1997. McGee Affidavit, Exhibit C at LL–00047. Thus, it was reasonable for Liberty to consider the loss on which Plaintiff's claim is based on to be the brain damage he suffered while ill with spinal meningitis and encephalitis during the fall of 1997.

Further, there is nothing in the Policy that supports Plaintiff's argument, Plaintiff's Memorandum at 7, that "date of the loss" as written in the Notice and Proof of Claim section is referring exclusively to a claimant's loss of earnings. McGee Affidavit, Exhibit A at 25. Plaintiff refers, in support of his contention, to the Quick Recovery Program subsection of Section 4—Disability Income Benefits of the Policy, which states, "[w]hen proof is received that a Covered Person is Partially Disabled and has experienced a loss of earnings because of an Injury or Sickness, he may be eligible to receive a Loss of Earnings Monthly Benefit under Liberty's Quick Recovery Program." McGee Affidavit, Exhibit A at LL–00013. However, Plaintiff fails to demonstrate this provision in must be construed as qualifying the Plan's Section 7–Notice and Proof of Claim requirements for timely notice of a claim for long-term disability benefits. The Quick Recovery Program provision does not necessarily create an exception to the 30 day notice requirement. The Quick Recovery Program provision refers to a covered person's eligibility for a "Loss of Earnings Monthly Benefit" if partially dis-

abled and the Notice and Proof of Claim provision refers to the requirements to effectively make a claim for disability benefits. Because the word "loss" appears in both provisions it does not follow that the definition of "loss" in the one equates with the definition of "loss" in the other, as each provision describes a different form of disability benefit under the Policy and thus may have different meanings.

Finally, Plaintiff argues that Liberty's decision was arbitrary and capricious because Liberty did not consider the question of when it became reasonably possible to give notice of claim. Plaintiff's Memorandum at 5. While the Policy provides that notice of claim must be given within 30 days of the date of the loss *if possible*, sufficient evidence exists in the administrative record for Liberty to conclude that it was possible for Plaintiff to provide notice of his claim well prior to June 2000. Plaintiff states in his Disability Claim Form that as a result of his illness, he left employment at Harris Beach on August 14, 1997. McGee Affidavit, Exhibit B at LL–00047. According to Harris Beach, Plaintiff initially returned to work at the firm in September 1997, but experienced difficulties in resumption of his normal work schedule. *Id.* Plaintiff again returned to work in December 1997, where he remained employed until he left in July 1998 in order to join another law firm. *Id.*

There is nothing in the administrative record to suggest that it was not possible for Plaintiff to submit notice of his claim upon his return to Harris Beach in December 1997 after having first experienced difficulties in resuming his normal work schedule in September 1997. For example, Plaintiff does not suggest that there was any other possible reason for such difficulties other than the effects of the encephalitis and spinal meningitis. As noted, Plaintiff claims that the October 31,

1997 letter sent by Harris Beach to Liberty constituted notice of his claim. McGee Affidavit, Exhibit B at LL–00039. It is therefore difficult to reconcile Plaintiff's argument that it was not possible for him to provide notice prior to June 2000, on the one hand, but that he did provide the requisite notice, through Susan Dearstyne's letter, almost three years prior. In fact, Plaintiff states that in the fall of 1997, he spoke with the partners at Harris, Beach to confirm that preliminary notice had been given to Liberty and was repeatedly advised that Liberty had been given notice of his illness. Rothenberg Affidavit, Exhibit A at 2. Based on this information, it was not unreasonable for Liberty to conclude that Plaintiff could have filed his notice of claim within the required 30 day this time period, beginning, at the latest, December 1997, or, at a minimum, within a reasonable period thereafter. Plaintiff's delay of more than two years was not reasonable.

■ Plaintiff further argues that not only was Liberty required to consider whether it was possible for Plaintiff to file his claim within the 30 day period, but that Liberty should have investigated whether it was reasonably possible for Plaintiff to submit notice of his claim prior to June 2000. Plaintiff's Memorandum at 6. As stated, Liberty had sufficient information in the administrative record to determine that it was possible for Plaintiff to file notice of his claim prior to June 2000, and there was nothing in the record to induce Liberty's further investigation after receipt of the Dearstyne letter in October 1997. Plaintiff points to no authority imposing a duty on a ERISA benefits administrator to investigate possible reasons why a claimant might not have been able to file a timely claim. Rather, New York law, which is applied by the court to this

issue, places such a burden on the claimant.[4] "An insured has the burden of proving reasonableness of delayed notice and must exercise reasonable care and diligence and keep itself informed of accidents out of which claims for damages may arise." *Green Door Realty Corporation,* 329 F.3d at 287.

In any case, the information that Plaintiff maintains would have been discovered upon additional investigation of whether it was possible for Plaintiff to file notice of his claim, would not have required a finding by Liberty that Plaintiff gave timely notice. Plaintiff argues that the letters of Dr. Marvin Goldstein (Plaintiff's neurologist) and Dr. Gregory Riley (Plaintiff's treating physician) indicate that Plaintiff could not have given notice of his disability claim until spring of 2000. Rothenberg Affidavit at 6, Exhibits C and D. Both physician's letters suggest that it would not have been possible to determine, until the spring of 2000, the permanence of Plaintiff's brain injury caused by the encephalitis. However, permanence of a claimant's injury or conditions in not a determining factor for disability coverage under the Policy. Rather, to be "disabled" and eligible for coverage under the Policy the claimant must be "unable to perform all of the material and substantial duties of his occupation on an Active Employment basis because of an Injury or Sickness." McGee Affidavit, Exhibit A at LL–00006. Therefore, Plaintiff was required to show only that he was unable to perform the material and substantial duties of his occupation as an attorney because of his illness, not that he would never recover. If Plaintiff did experience recovery from his illness, his benefits could then be terminated. *Id.* at LL–00017. But proof that Plaintiff's brain injury is permanent is not

4. See Discussion, *supra,* at 491 n. 2.

a prerequisite under the Policy for entitlement to disability benefits. Rather, the operative criterion was whether the condition impaired materially Plaintiff's capacity to perform his professional duties. Nothing in the Plaintiff's symptoms which adversely affected his capacity for regular work while he was employed at Harris Beach as an attorney were undiagnosable at the time Plaintiff's ability to resume such work proved, in September and again in December 1997, sufficiently impaired to prevent him from doing so. Indeed, Peter Sorman, Ph.D, a Clinical Neuropsychologist, who examined and reported on Plaintiff's illness and condition, stated that after Plaintiff returned to work in 1997, he experienced "considerable ... confusion," "could not tolerate day-to-day pressures," suffered "significant short-term memory loss," which resulted in the fact that his law partners were "[i]n essence ... 'covering for him.'" Rothenberg Affidavit, Exhibit B ("Sorman Report") at 2. Additionally, Dr. Goldstein's opinion that Plaintiff's cognitive loss had become permanent does not also find that Plaintiff's impairment had worsened. Rothenberg Affidavit, Exhibit C. As such, Plaintiff had ample basis for filing a timely claim, earlier than June 2000, with Liberty yet failed to do so.[5] Accordingly, the ultimate degree or extent of Plaintiff's injury to his brain resulting from the encephalitis contracted in August, 1997 is irrelevant to whether Plaintiff failed to give timely notice under the Policy, and whether Defendant Liberty's decision that Plaintiff failed to do so was arbitrary and capricious.

### C. *Plaintiff's Eligibility for Coverage*

#### 1. *Waiver of Liberty's Coverage Defense*

The sole reason stated by Liberty in its denial letters to Plaintiff for denying his claim for disability benefits was that Plaintiff filed an untimely notice of claim.[6] McGee Affidavit, Exhibit B at LL–00042. However, Liberty in this litigation argues that regardless of Plaintiff's late notice, Plaintiff is ineligible for coverage under the terms of the Policy. Initially, it must be decided whether Liberty's failure to assert lack of coverage as a ground for denial of the insured's claim during the administrative review of the claim precludes it as a defense in this lawsuit.

"[U]nder the law applicable to insurance policies, an insurer may be barred from raising defenses not asserted in communications to the insured denying coverage." *Juliano v. Health Maintenance Organization of New Jersey, Inc.*, 221 F.3d 279, 288 (2d Cir.2000). District courts should conduct a "case-specific analysis" in deciding whether an insurer has waived a defense in an ERISA action. *Lauder v. First Unum Life Insurance Company*, 284 F.3d 375, 381 (2d Cir.2002). However, "where the issue is the existence or nonexistence of coverage (e.g., the insuring clause and exclusions), the doctrine of waiver is simply inapplicable." *Juliano*, 221 F.3d at 288 *citing Albert J. Schiff Assocs. Inc. v.*

---

**5.** Plaintiff asserts that because his physicians failed to diagnose in the fall of 1997 the full extent of his brain injury from the encephalitis and spinal meningitis, he was "ethically constrained" from filing a formal claim at that time. Rothenberg Affidavit, Exhibit A ¶ 11. However, Plaintiff does not cite to any relevant authority to demonstrate the basis for such a constraint.

**6.** The court notes that Liberty stated in its denial letter, "[n]othing in this letter should be construed as a waiver of any Liberty Life Assurance Company of Boston rights and defenses under the above captioned policy, all of these rights and defenses are reserved to the Company, whether or not they are specifically mentioned herein." McGee Affidavit, Exhibit B at LL–00042.

*Flack,* 51 N.Y.2d 692, 435 N.Y.S.2d 972, 417 N.E.2d 84, 86 (1980)(parenthetical material in original).

Under the Policy terms, Liberty agrees to pay a disability benefit when "Liberty receives proof that a Covered Person is Disabled due to Injury or Sickness and requires the regular attendance of a Physician." McGee Affidavit, Exhibit A at LL–00012. To be considered "Disabled" under the Policy, it is required that the claimant be unable to perform all the material and significant duties of his occupation on an Active Employment basis for 180 days as a result of his illness. *Id.* at LL–00006. Further, a "Covered Person" means an Employee insured under the Policy. *Id.* at LL–00005. An individual ceases to be insured as of the date the claimant's employment terminates. *Id.* at LL–00022.

Liberty argues that Plaintiff is not "Disabled" because he was not absent from work for 180 consecutive days as a result of his illness and that he is also not a "Covered Person" because Plaintiff's coverage was terminated when he left Harris Beach to join another firm on July 31, 1998. Such required elements as being "Disabled" and a "Covered Person" are analogous to whether underlying coverage exists at all, and thus can not be waived. *Juliano,* 221 F.3d at 288. Waiver of Liberty's defenses on this issue would create coverage where none would otherwise exists and expand the policy so that the insured "extend[ed] its coverage to more than it originally bargained." *Lauder,* 284 F.3d at 381 *citing Albert J. Schiff Assocs. Inc.,* 435 N.Y.S.2d 972, 417 N.E.2d at 86–87. Under such circumstances, any waiver of these defenses, as Plaintiff seeks to impose on Defendant, is without legal foundation.

2. *Standard of Review*

Plaintiff argues that the coverage issue should be reviewed *de novo* because a conflict of interest exists as Liberty is both the decider of eligibility and the payer of benefits. Further, Plaintiff maintains that good cause exists for considering evidence outside the administrative record considering Plaintiff was not afforded an opportunity to present any evidence to Liberty on the coverage issue.

Plaintiff's conflict of interest argument fails because an administrator with a conflict of interest receives the same deference as a administrator without such conflicts unless the claimant can demonstrate that "the administrator was *in fact* influenced by the conflict of interest." *Pulvers,* 210 F.3d at 92 *quoting Sullivan v. LTV Aerospace & Defense Co.,* 82 F.3d 1251, 1256 (2d Cir.1996) (internal quotation marks omitted) (italics in original). If the claimant can make such a showing, the standard of review becomes *de novo;* if not, the fact that the administrator both determines eligibility and pays benefits serves only as "a factor to be weighed in determining whether there has been an abuse of discretion." *Pulvers,* 210 F.3d at 92 *quoting Sullivan,* 82 F.3d at 1255–256. Plaintiff has not shown that Liberty's decision was in fact influenced by the asserted conflict by merely claiming, as does Plaintiff, that Liberty is both the administrator and payer of benefits under the Policy. Such generalized assertion of conflict alone does not shift the standard of review. *Henar v. First Unum Life Insurance Company,* 2002 WL 31098495, *3 (S.D.N.Y. Sept. 19, 2002).

Plaintiff also contends that because Liberty did not include lack of coverage as a reason for its denial of Plaintiff's request for disability benefits in its denial letter to Plaintiff, good cause exists to consider evidence outside the administrative record as to whether Plaintiff had established coverage under the Policy. Plaintiff's Memo-

randum at 4. "[T]he decision [of the district court] whether to admit additional evidence [beyond the administrative record] is one which is discretionary with the district court, but which discretion ought not be exercised in the absence of good cause." *Juliano*, 221 F.3d at 288 *citing DeFelice v. American Int'l Life Assurance Co. of New York*, 112 F.3d 61, 66 (2d Cir.1997). The failure of Liberty to state lack of coverage as a reason for its denial of benefits in its notices deprived Plaintiff of an opportunity to make a contrary case to the administrator, and, thus, Plaintiff can not be faulted for having not provided Liberty, prior to its denial of benefits, with evidence of his coverage under the terms of the Policy. *See Juliano*, 221 F.3d at 288–89 (failure of an HMO to specify in its notices the reason for denial of benefits deprived the member of the ability to dispute the denial and, therefore, the case could not be decided solely on the administrative record).

However, Plaintiff fails to proffer what extrinsic evidence he believes may tend to cause Defendant to reconsider its position that, even if Plaintiff's notice of claim should be found by the District Judge, contrary to the undersigned recommendations, to be timely, Plaintiff should have been also found to be a Covered Person under the policy. As discussed, Discussion, *infra*, at 22–28, Plaintiff, even assuming he was totally disabled for some time after returning to work in December 1997, did not continue to be employed at Harris, Beach for 180 days in such disability status until the time he left such employment to join another firm in July 1998. *Id.* at 29 n. 9 (at most, Plaintiff achieved 109 days of employment with Harris Beach while totally disabled as he contends). Additionally, in opposing the instant motion, Plaintiff has not pointed to any evidence that he was unable to perform the material and substantial duties as an attorney while em-

ployed by Harris Beach after August 1997. Thus, remand to Liberty to permit submission by Plaintiff of additional evidence on the issue of coverage would be futile, and should not be directed in the alternative.

### 3. *Plaintiff was not "Disabled" as Defined by the Policy*

Liberty argues that because Plaintiff was not absent from work while employed with Harris Beach, the employer, on an Active Employment basis for 180 consecutive days from the date of his illness (the "Elimination Period"), he is ineligible for coverage under the terms of the Policy. Liberty's Memorandum at 9. In response, Plaintiff contends that it is not necessary for him to show that he was unable to work on an Active Employment basis to be "Disabled" under the Policy and that the Elimination Period determines only when benefits begin, not whether an individual is disabled or eligible for benefits. Plaintiff's Memorandum at 3, 5. Upon reviewing the Policy, the court finds Liberty's interpretation, that Plaintiff must be unable to work on an Active Employment basis and that the 180 day Elimination Period refers to the period during which the employee-beneficiary is disabled, to be reasonably based.

As stated, the Policy provides, "When Liberty receives proof that a Covered Person is Disabled due to Injury or Sickness and requires the regular attendance of a Physician, Liberty will pay the Covered Person a Monthly Benefit after the end of the Elimination Period." McGee Affidavit, Exhibit A at LL–00012. According to the Policy, if a Covered Person is eligible for the Maximum Own Occupation Benefit (which Plaintiff, a partner in active employment at his firm, was) " 'Disabled' means during the Elimination Period and until the Covered Person reaches the end of the Maximum Benefit Period he is un-

able to perform all of the material and substantial duties of his occupation on an Active Employment basis because of an Injury or Sickness." *Id.* at LL–00006. The Elimination Period begins on the first day of the disability and consists of 180 consecutive days of disability for which no benefit is payable. *Id.* at LL–00006; LL–00003. Plaintiff, being under the age of 60 at the time of his disability, has a Maximum Benefit Period of age 65, *i.e.,* the age at which his disability benefit under the Policy will terminate. *Id.* at LL–00004. "Active Employment means the Employee must be actively at work for the Sponsor on a full-time basis and paid regular earnings." *Id.* at LL–00005.

Therefore, under the Policy terms, Plaintiff was not entitled to receive benefits unless he provided proof that he was unable to perform all of his material and substantial duties as an attorney on a full-time basis because of his illness. *Id.* at LL–00003; LL–00005–6; LL–00012, and for the Elimination Period while employed at Harris Beach. Plaintiff argues that the Policy term "all of his material and substantial duties" requires that Plaintiff show only that he was unable to perform a single material and substantial duty of his occupation prior to his leaving Harris Beach, not that he was "completely prevented" from performing his occupation. Plaintiff's Memorandum at 5. On the other hand, Liberty contends that the requirement "unable to perform all of his material and substantial duties" means that Plaintiff must be unable to perform each and every material duty of his occupation as an attorney. Liberty's Memorandum at 10. This court finds Defendant's interpretation of the Policy's requirement not to be unreasonable.

There is nothing ambiguous about the Policy's definition of "Disabled." The phrase "unable to perform all of the material and substantial duties of his occupation" means completely unable to carry out every important and essential component of Plaintiff's occupation as an attorney.[7] It therefore is contrary to a plain reading of the Policy that to be considered "disabled" Plaintiff would need only show that he is incapable of accomplishing just one of his material duties as an attorney.

Moreover, Plaintiff's proffered interpretation of the meaning of "Disabled," is in fact the definition of "Partially Disabled" under the Policy. Partially Disabled means as a result of the Injury or Sickness, the Covered Person is "able to perform one or more, but not all, of the material and substantial duties of his own or any other occupation on an Active Employment or part-time basis." McGee Affidavit, Exhibit A at LL–00013. Considering an individual who is able to perform some, but not all of his substantial duties is considered Partially Disabled under the Policy, it can be inferred that the same meaning does not apply to "Disabled." Otherwise, the two forms of coverage within the Policy would be basically similar in

---

7. "As a general matter, unambiguous language in an ERISA plan must be interpreted and enforced in accordance with its plain meaning." *Aramony v. United Way Replacement Benefit Plan,* 191 F.3d 140, 149 (2d Cir.1999). "Material" is defined as "being of real importance or great consequence." Webster's Third New International Dictionary, Unabridged 1392 (1986). "Substantial" is defined as "being of moment: important, essential." *Id.* at 2280.

"Occupation" has been defined to mean "the principal business of one's life: a craft, trade, professional or other means of earning a living: employment, vocation." *DiTommaso v. Union Cent. Life Ins. Co.,* 1991 WL 124601, *3 (E.D.Pa.1991), *aff'd,* 972 F.2d 1330 (3d Cir.1992) (quoting Webster's Third New International Dictionary (1986)).

scope, rendering one or the other surplusage, contrary to accepted principles of contractual construction. "[C]ourts, in interpreting insurance policies, should strive to give 'meaning ... to every sentence, *clause*, and word of a contract of insurance.'" *Northville Corp. v. National Union Fire Insurance Co.*, 679 N.E.2d 1044, 657 N.Y.S.2d 564, 567–68, 89 N.Y.2d 621 (1997) quoting 69 N.Y. Jur.2d, Insurance § 701, at 91–92 and citing cases (underlining added). *See also* Calamari & Perillo, *The Law of Contracts*, 4th ed. 1998 (West Group) at 155. "A writing must be interpreted as a whole and no part be ignored. All of the writings that form a part of the same transaction should be interpreted together and, if possible, harmonized." *Id.*

Thus, although Plaintiff's construction is not implausible, when considered in juxtaposition with the Policy's Partial Disability provision, it is insufficient to show that Liberty's interpretation is arbitrary. Significantly, neither the Policy "Definitions," McGee Affidavit at LL–00005, nor the statement of criteria for eligibility for disability benefits provides any definition of the term "occupation." *Id.* at LL–00006, 00013. Rather, the Policy describes the business of Harris Beach to be a "law firm," and Plaintiff's claim states his occupation as "attorney," *Id.* at LL–00033. Because the professional duties of a practicing attorney can vary widely depending on the nature of the particular practice area in which an attorney works, it is difficult to say, on this record, that Plaintiff's impairments in fact prevented him from practicing law as an "attorney" in any form with Harris Beach. To the contrary, it appears Plaintiff was able to function as an attorney at Harris Beach after he returned to work in December 1997 and was able to continue his practice law at another firm after July 1, 2998, while suffering from the diagnosed cognitive impairments despite their permanent nature as later diagnosed by Dr. Goldstein.

Plaintiff also argues that the Policy does not require that he be unable to perform his material and substantial duties during the Elimination Period, but rather the Elimination Period determines only when benefits begin. Plaintiff's Memorandum at 3. In support, Plaintiff relies on a provision of the Policy which provides that, "when Liberty receives proof that a Covered Person is Disabled due to Injury or Sickness, and requires the regular attendance of a Physician, Liberty will pay the Covered Person a Monthly Benefit after the end of the Elimination Period." *Id.* at LL–00012. While, as Plaintiff states, the Policy requires the passage of the 180 day Elimination Period prior to a disabled person's entitlement to benefits, the Policy also requires that Plaintiff be unable to perform all of his material or substantial duties as an attorney during the Elimination Period to be considered Disabled and thus eligible for benefits. *See Id.* at LL–00006. By requiring that Plaintiff be unable to perform all of his material duties during the Elimination Period and until he reaches the end of his Maximum Benefit Period, the Policy is simply requiring that to receive long-term disability benefits under the Policy the claimant must be unable to perform all of the material and substantial duties of his occupation on a full time basis from the day his disability begins until his benefit period expires. Therefore, Liberty's interpretation that under the terms of the Policy, that Plaintiff must be unable to perform each of the material and substantial duties of his occupation on a full-time basis to receive disability benefits, including during the Elimination Period, is not arbitrary and capricious.

With the correct interpretation in mind, based on the evidence, Plaintiff does not satisfy the Policy's requirements for re-

ceipt of long-term disability benefits. Even assuming that Plaintiff was unable to perform all of his material and substantial duties as an attorney during his sick leave from Harris Beach beginning on August 14, 1997, there is no evidence that Plaintiff was unable to perform all his material and substantial duties as an attorney and partner at Harris Beach upon his return to work in December, 1997. Rather, Plaintiff remained at Harris Beach employed as a partner until July 31, 1998, when he left to join another law firm. McGee Affidavit, Exhibit C. While Dr. Peter Sorman's report and the affidavits of Plaintiff, Dr. Marvin Goldstein, and Dr. Gregory Riley, establish that Plaintiff began to suffer from some cognitive defects in September 1997, nothing in their affidavits demonstrates that Plaintiff was unable to perform each of his material and substantial duties as an attorney. Rothenberg Affidavit, Exhibits A–D. Indeed, nowhere in Plaintiff's papers does Plaintiff explain with particularity which professional duties of his occupation as an attorney he was unable to perform while he continued to work at Harris Beach following his return in December 1997.[8] While Dr. Sorman stated in September 2001 that Plaintiff's cognitive disorder had rendered Plaintiff totally disabled from functioning as an attorney, Dr. Sorman's report did not identify which duties of Plaintiff's occupation as an attorney were thereby severely impaired nor does it state when Plaintiff became so disabled. See Rothenberg Affidavit, Exhibit B at 5. In fact, Dr. Sorman describes several "compensating strategies" to assist Plaintiff in compensating for the effects of his cognitive disorder.

Id. Therefore, Plaintiff has failed to show that he was unable to perform all of his material and substantial duties as an attorney while employed at Harris Beach after contracting the encephalitis in August 1997, and during the 180 day Elimination Period, as required to satisfy the definition of "Disabled" under the Policy. McGee Affidavit, Exhibit A at LL–00006. Accordingly, Liberty did not act arbitrarily in reaching its decision that Plaintiff is not "Disabled" under the Policy terms.

### 4. Plaintiff was no Longer a "Covered Person" in June 2000

Liberty also argues that Plaintiff is ineligible for coverage under the terms of the Policy because his coverage ceased when he terminated employment at Harris Beach on July 31, 1998 in order to join another law firm and he therefore could not have satisfied the 180 day Elimination Period prerequisite to coverage while employed at Harris Beach. Plaintiff argues in response that he became disabled prior to his leaving Harris Beach and, therefore, was a "Covered Person" when he filed his claim in June 2000. This court agrees with Liberty that Plaintiff is ineligible for coverage because when he filed his claim in June 2000 he was no longer insured by Liberty as a Covered Person under the Plan.

The Policy provides in Section 6 that a Covered Person will cease to be insured the date the employment terminates. McGee Affidavit, Exhibit A at LL–00022. "Cessation of Active Employment will be deemed termination of employment, except the insurance will be continued for an Em-

---

**8.** Dr. Sorman's reference to the fact that Plaintiff's partners were required to "cover" for him, Rothenberg Affidavit Exhibit B at 2, although indicative of some degree of impairment, does not demonstrate that Plaintiff was then unable to perform all of the material and substantial aspects of his professional duties. Even Dr. Goldstein and Dr. Riley do not specifically opine that Plaintiff was in fact totally disabled at a particular time following the onset his illness. Id., Exhibit C, D.

ployee absent due to Disability during: a. the Elimination Period; and b. any period during which premium is being waived." *Id.* Plaintiff does not dispute that a Covered Person ceases to be insured on the date employment terminates. Plaintiff's Memorandum at 3. It is also undisputed that Plaintiff terminated his employment with Harris, Beach on July 31, 1998 to join the law firm of Trevett, Lenweaver & Salzer, P.C. Liberty's Fact Statement at ¶¶ 29–30; Plaintiff's Fact Statement ¶¶ 29–30. There is no evidence in the record that Plaintiff left Harris Beach for any reason other than his decision to join another law firm. Thus, under the Policy terms, Plaintiff's insurance coverage ceased when he left Harris Beach on July 31, 1998. As discussed, Discussion, *supra*, at 8–18, because Plaintiff did not file his claim until June 2000, two years after he was no longer insured under the Policy, Plaintiff is ineligible for coverage. Moreover, even if Plaintiff did file a timely notice, his departure from Harris Beach in July 1998, prevented him from satisfying the 180 day Elimination Period while disabled requirement prerequisite to coverage.[9] Further, even if Plaintiff was disabled for 180 consecutive days, such 180 day period did not accrue during his employment with Harris Beach prior to his departure in July 1998.

Plaintiff argues that because he was disabled while employed at Harris Beach, his leaving the firm and resulting cessation of insurance under the Policy, does not preclude his claim. In support, he relies upon the Policy provision which states, "Termination of this policy under any conditions will not prejudice any claim which occurs while this policy is in force." *Id.* at 00023. First, as Liberty points out, this provision refers to circumstances in which the entire Policy is terminated because of a failure to pay any premium or because of Liberty's or Harris Beach's desire to terminate the Policy, and is not applicable to the subsection pertaining to when a covered person will cease to be insured. *See* McGee Affidavit, Exhibit A LL–00022–LL–00023. Even if this provision was applicable, Plaintiff would be required to show issue as to whether his claim occurred while he was employed at Harris Beach and, as just discussed, he fails to do so. During all times Plaintiff was employed at Harris Beach and insured for coverage under the policy, he was not "Disabled" as defined by the Policy. Discussion, *supra*, at 22–28. Plaintiff argues that the report of Peter B. Sorman, Ph.D., a Clinical Neuropsychologist, which states that Plaintiff's deficits first appeared in the fall of 1997, supports that he became disabled while he was still covered under the Policy. Rothenberg Affidavit, Exhibit B. However, the fact that he Plaintiff may have been suffering from cognitive deficits while employed and

---

**9.** As noted, Discussion, *supra*, at 26, Plaintiff began sick leave from Harris Beach because of his encephalitis and spinal meningitis on August 14, 1997 and returned to work in December 1997. McGee Affidavit, Exhibit C at LL–00047. He then remained working at Harris Beach until he left in July 1998. Liberty's Fact Statement ¶¶ 29–30; Plaintiff's Fact Statement ¶¶ 29–30. The only period of time in which Plaintiff could have arguably been unable to perform all of his material and substantial duties as an attorney while employed at Harris Beach was during his sick leave from the firm, which consisted of, at most, 109 days, *i.e.*, the number of days Plaintiff remained an employee at Harris Beach between August 14, 1997 and July 31, 1998 less the number of days Plaintiff worked at the firm during the period. Therefore, prior to terminating his employment at Harris Beach, on July 31, 1998, Plaintiff was never unable to perform all of the material and substantial duties of his occupation on an Active Employment basis, *i.e.*, while employed at Harris Beach, for a period of 180 consecutive days, as required to be considered "Disabled" under the Policy. McGee Affidavit, Exhibit A at LL–00006.

working as an attorney at Harris Beach does not prove that he was unable to perform all of the material and substantial duties of being an attorney and a partner at Harris Beach after his illness, an essential requirement to satisfying the 180 Elimination Period. Because Liberty reasonably determined that prior to Plaintiff's leaving Harris Beach in July 1998, and the resulting termination of his Policy, Plaintiff did not file a timely claim with Liberty and was not "Disabled" under the terms of the Policy, his claim did not accrue under the terms of the Policy, and he is thus ineligible for benefits.

### D. *Breach of Fiduciary Duty*

In addition to Plaintiff's claim for long term disability benefits pursuant to ERISA § 502(a)(1)(B), Plaintiff also seeks the same benefits under ERISA § 502(a)(3) for an alleged breach of fiduciary duty. Section 502(a)(3) provides a right to action "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violated any provision of this title or the terms of the plan, or (B) to obtain other appropriate relief to (i) redress such violations or (ii) to enforce any provision of this title or terms of the plan." Plaintiff claims that Liberty breached its fiduciary duty by not promptly reviewing and processing his claim for disability benefits. Amended Complaint at 4. Specifically, Plaintiff alleges that Liberty had a fiduciary obligation to respond to Harris Beach's October 1997 letter from Ms. Dearstyne by providing proof of claim forms or notifying Plaintiff that he needed to file proof of his claim. *Id.* at 5. In any case, Plaintiff contends that Liberty should have notified him that Liberty considered the letter to be inadequate notice of his claim so that Plaintiff could take steps to file an adequate one. Plaintiff's Memoran-

dum at 7. Plaintiff has failed to establish that Liberty breached its fiduciary duty to Plaintiff, as imposed by Section 502(a)(3), by not responding to Harris Beach's October 1997 letter and, therefore, cannot defeat Defendant's request for summary judgment on Plaintiff's claim brought pursuant to § 502(a)(3).

▐ At the outset, Plaintiff contends that because Judge Bauer, in granting Plaintiff's motions to amend the Complaint, permitting Plaintiff to assert under § 502(a)(3), Liberty's breach of fiduciary duty, rejected the same arguments raised by Defendant in opposition to the motion to amend, that the Law of the Case Doctrine applies and requires such contentions be rejected in connection with the instant motion. Rothenberg Affidavit ¶ ¶ 53–57; Plaintiff's Memorandum at 8, 9. Under the Law of the Case Doctrine, "courts generally refrain from reconsidering matters previously determined absent 'cogent' or 'compelling' reasons." *Baden v. Koch,* 799 F.2d 825, 828 (2d Cir.1986). The doctrine is discretionary, and "does not constitute a limitation on the court's power." *United States v. Birney,* 686 F.2d 102, 107 (2d Cir.1982). A motion for leave to amend pursuant to Fed.R.Civ.P. 15, however, unlike a determination of a motion for summary judgment, pursuant to Fed.R.Civ.P. 56(a), as sought by Liberty, is not a judicial determination on the merits of the proposed claim. *Allstate Ins. Co. v. Administratia Asigurarilor De Stat,* 875 F.Supp. 1022, 1029 (S.D.N.Y.1995) ("arguments that address the merits are not relevant to a motion for leave to amend the pleadings.") (citing cases). Accordingly, Judge Bauer had no occasion to render a decision on the merits of Plaintiff's proposed § 502(a)(3) breach of fiduciary duty claim and the Law of the Case Doctrine

has no relevance to the instant motion.[10] Plaintiff cites no authority to the contrary.

Turning to the merits of Plaintiff's argument, first, Plaintiff fails to identify the section of ERISA that establishes the fiduciary duty he claims Liberty violated. ERISA Section 404(a)(1) provides in relevant part that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and ... with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1). "Because the statute does not enumerate or elaborate in any detail on the duties owed by a fiduciary to a plan beneficiary, the courts have been called upon to define the scope of a fiduciary's responsibilities." *Pocchia v. NYNEX Corporation,* 81 F.3d 275, 278 (2d Cir.1996). Plaintiff does not cite to, and the court's research fails to reveal, any caselaw interpreting ERISA to require a fiduciary to respond in any manner to a letter such as the one sent by Harris Beach to Liberty in October 1997.

While a fiduciary is required to promptly furnish a decision on review of a claim, 29 C.F.R. § 2560.503–1(h)(1), (4), there nothing contained in Harris Beach's October 1997 letter to Liberty that imposed a duty upon Liberty to respond. The letter states that its purpose is to provide "preliminary notice of a disability claim which may be made on behalf of one of our partners." McGee Affidavit, Exhibit C at LL–00048. The letter further states, "I will keep you aware of this situation if it progresses." *Id.* Nothing contained in this letter invites or demands a response by Liberty. This letter simply informed Lib-

erty that a partner at Harris Beach may file a disability claim in the future. It does not request that Liberty review Plaintiff's claim, and, therefore, Liberty was not required to furnish a response. Indeed, a fair reading of the letter's actual text ("I will keep you aware of this situation *if* it progresses."), McGee Affidavit, Exhibit B at LL–00048 (underlining added) implies that Liberty should await further advice before taking any action.

Furthermore, even if the letter did constitute notice of Plaintiff's claim (which the court has found it does not), Liberty would not be required to provide proof of claim forms to Plaintiff or to notify him that he needed to file proof of his claim. The Policy provides that if a claimant does not receive claim forms within 15 days after sending written notice of his claim, the claimant may send to Liberty written proof of a claim without waiting for the form. McGee Affidavit, Exhibit A at LL–00025. Thus, the Policy does not necessitate the use of any particular proof of claim form, which might impose on Liberty a contractual obligation to timely provide such form to Plaintiff. Also, the Policy explicitly states that proof of claim must be given to Liberty. *Id.* at LL–00026. Plaintiff provides no explanation as to why Liberty should have to provide notice of its proof requirement in addition to the information, explaining the notice of claim requirements and procedures, contained in the Policy nor why Plaintiff failed to provide Liberty with a further claim after Liberty failed to forward claim forms.

Finally, Liberty did not breach any fiduciary duty to Plaintiff by not informing him that it considered the letter to be inadequate notice of his claim. As explained, there is no language in the letter

---

**10.** Absent a consent of all parties, a magistrate judge is unable to make a finding on merits of a claim. *See* 28 U.S.C. § 636(b)(1)(A); (c).

that should have alerted Liberty that Plaintiff was attempting to file a claim, and, as discussed, Discussion, *supra,* at 32–33, the more reasonable interpretation is to the contrary. In any case, it is unlikely that had Liberty informed Plaintiff that it did not find the letter to be adequate notice of claim, Plaintiff would have then filed an effective proper notice with Liberty. Plaintiff has repeatedly stated that he believed it was improper for him to file a disability claim prior to his being informed by his physician, in June 2000, that his injuries were permanent, because he had returned to work at Harris Beach in December 1997, and expected to achieve a full recovery. Plaintiff's Memorandum at 1–2; Rothenberg Affidavit, Exhibit A at 2; Rothenberg Affidavit Exhibit A ¶ 11; McGee Affidavit, Exhibit B at LL–00040. Therefore, based on Plaintiff's statements, it is unlikely that Plaintiff would have filed a sufficient and timely notice of claim with Liberty during the fall of 1997 even if Liberty had complied with the fiduciary duties Plaintiff now seeks to impose, *nunc pro tunc,* upon it. Plaintiff's loss of benefits therefore cannot be reasonably attributed to Liberty's alleged breach, even if such duties as asserted by Plaintiff were found to have existed. Rather, Plaintiff's loss of benefits under the Policy is attributable to his own delay in filing a proper and timely notice of claim.

Additionally, Plaintiff's fiduciary duty claim under Section 502(a)(3) is without merit because it lacks the essential element of causation of cognizable damages. "Despite the fact that neither Section 404(a)(1) nor Section 502(a)(3) contains express language of causation, a plaintiff seeking to enforce the former via the latter [section] must demonstrate that the alleged breach caused damages recoverable under Section 502(a)(3)." *Tardif v. Gener-*

*al Electric Co.,* 2000 WL 33376644, *9 (D.Conn. Sept. 30, 2000) *citing Estate of Becker v. Eastman Kodak,* 120 F.3d 5, 10 (2d Cir.1997) (finding that the employer had committed a breach of the duty not to misrepresent, but refusing to direct the entry of judgement for the plaintiff because there remained the question of causation); *Hein v. FDIC,* 88 F.3d 210, 223–24 (3d Cir.1996) (dismissing fiduciary duty claim under Section 502(a)(3) because where plaintiff "was not entitled to the benefits in the first place, there is no causal link between the alleged breach of fiduciary duty by [defendants] and the denial of benefits to [plaintiff]").

Plaintiff's fiduciary duty claim is based on Liberty's alleged failure to respond to Harris Beach's October 1997 letter. However, even if Liberty did issue a response to the letter and, as a result, Plaintiff filed a timely notice of his claim, Plaintiff would still not be entitled to benefits because, as discussed, he was not "Disabled" under the Policy.[11] Therefore, because even assuming, *arguendo,* the absence of the alleged breach, Plaintiff would not have received the benefits, Liberty's breach of duty, as alleged, in itself could not have caused Plaintiff's loss of benefits under this claim. Thus, lacking the essential element of causation, Plaintiff's Section 502(a)(3) claim must fail.

Irrespective of Plaintiff's failure to establish a Section 502(a)(3) claim on its merits, Plaintiff cannot pursue relief for his fiduciary duty claim under Section 502(a)(3) as Plaintiff can seek to recover benefits under Section 502(a)(1)(B) of ERISA and any Section 502(a)(3) claim is redundant. In *Varity Corp. v. Howe,* the Supreme Court stated

"We should expect that courts, in fashioning 'appropriate' equitable relief, will

11. Discussion, *supra,* at 497–501.

keep in mind the 'special nature and purpose of employee benefit plans,' and will respect the 'policy choices reflected in the inclusion of certain remedies and the exclusion of others.' Thus, we should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate' "
516 U.S. 489, 515, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) (citations omitted). In *Varity v. Howe,* the Supreme Court permitted the Section 502(a)(3) claim to proceed because Plaintiffs could not continue under any of the other civil enforcement provisions in Section 502.

"In construing *Varity* decision, the majority of courts have held that when § 502(a)(1)(B) provides the plaintiff with adequate relief, then reliance under § 502(a)(3), a catchall provision is unnecessary and inappropriate." *Neely v. Pension Trust Fund of the Pension, Hospitalization and Benefit Plan of the Electrical Industry,* 2003 WL 21143087, * 12 (E.D.N.Y. Jan.16, 2003) *citing Frommert v. Conkright,* 206 F.Supp.2d 435, 439 (W.D.N.Y.2002). *See also Katz v. Comprehensive Plan of Group Ins.,* 197 F.3d 1084, 1088 (11th Cir.1999) (concluding ERISA plaintiff with an adequate remedy under § 502(a)(1)(B) cannot alternatively plead and proceed under § 502(a)(3)and holding that availability of adequate remedy "does not mean, nor does it guarantee, an adjudication in one's favor"); *Wald v. Southwestern Bell Corp. Customcare Med. Plan,* 83 F.3d 1002, 1006 (8th Cir.1996) (granting motion to dismiss § 502(a)(3) claim because plaintiff had an adequate remedy at law under Section 502(a)(1)(B) even though her claim under that section was unsuccessful); *Edwards v. Akzo Nobel, Inc.,* 103 F.Supp.2d 214, 220 (W.D.N.Y.2000) (holding plaintiffs' claim under Section 502(a)(3)

is improper when plaintiffs seek only recovery of benefits and have an adequate remedy under Section 502(a)(1)(B)); *Joyce v. Curtiss–Wright Corp.,* 992 F.Supp. 259, 271 (W.D.N.Y.1997) (dismissing plaintiff's claim under § 502(a)(3) because claim sought relief that duplicated the relief sought on a claim for benefits under § 502(a)(1)(B)); *cf. Strom v. Goldman, Sachs & Co.,* 202 F.3d 138, 148–49 (2d Cir.1999) (permitting plaintiff to proceed under Section 502(a)(3) only because she could not under Sections 502(a)(1)(B) or (a)(2)).

In the instant case, the only remedy Plaintiff seeks under both Sections 502(a)(1)(B) and 502(a)(3) is the recovery of benefits he claims are payable to him pursuant to the Policy. Amended Complaint at 5. Therefore, because recovery of benefits is an available remedy under Section 502(a)(1)(B), Plaintiff loses nothing by dismissal of his claim under Section 502(a)(3). This court's ability to fashion appropriate relief in this case is amply covered by Section 502(a)(1)(B). For this reason, as well as the others discussed, *supra,* Liberty's motion for summary judgment on Plaintiff's Section 502(a)(3) claim should be GRANTED.

### CONCLUSION

Based on the foregoing, Defendant Liberty's motion for summary judgment should be granted as to both of Plaintiff's claims brought pursuant to Sections 502(a)(1)(B) and 502(a)(3) of ERISA.